## MARSH v. DELAWARE, L. & W. R. Co.

*(Supreme Court, General Term, Fifth Department.   January 24, 1891.)*

WATERS AND WATER-COURSES—DIVERSION—QUESTION FOR JURY.

In an action for the obstruction and diversion of a stream, it appeared that defendant built a dam above plaintiff's mill, and inserted a three-inch pipe, through which water ran to its tank. Plaintiff introduced evidence that since the dam was constructed there was never enough water to furnish full power to his mill, while theretofore there had been enough to run it 10 months out of the year, and that before the loss of water the rental value of the mill was $500 a year, and afterwards nothing. Defendant introduced evidence that the diminution of the stream was not due to defendant's dam and pipe, but to a gradual drying up, and that plaintiff was not injured. *Held,* that the question was properly submitted to the jury, and a verdict for plaintiff would not be disturbed.

Appeal from circuit court, Livingston county.

Action by David Marsh against the Delaware, Lackawanna & Western Railroad Company. Judgment was entered on a verdict for $762.22 in favor of plaintiff, and a motion for a new trial was denied, and defendant appeals.

Argued before DWIGHT, P. J., and MACOMBER and CORLETT, JJ.

*Charles J. Bissell,* for appellant.  *Hubbard & Coyne,* for respondent.

CORLETT, J.  In 1878 the plaintiff bought a flouring-mill situated upon Baird's creek, in the town of Leicester, Livingston county. At the time of the purchase the mill was not operated, and had not been for four or five years. The plaintiff repaired the mill, race, flume, and foundations, and put in a new dam. It was a stone mill, with two run of stone for flour, and one for feed. The defendant is a railway corporation, chartered under the laws of Pennsylvania, and operating its road in the state of New York, from Binghamton to Buffalo. It crosses the creek in question. In the fall of 1883, a little over two miles above the plaintiff's dam, the defendant constructed a dam, which created a pond 30 feet in width and over 20 rods in length. The defendant inserted a three-inch pipe in the dam, through which the water flowed, and was conducted about 4,000 feet to a tank on defendant's road, which was used to water locomotives. The capacity of this pipe was 1 gallon per second, or 86,000 a day. The plaintiff's mill was operated by water, made available by the dam and a race. In November, 1887, the plaintiff brought this action to recover damages from the defendant for the diversion of the waters of the creek. The complaint alleges, in substance, among other things, that the plaintiff and his grantors owned and operated a flouring-mill situated on the creek since 1862, and were entitled to enjoy the waters of the creek for the purpose of operating the mill; and that the defendant wrongfully diverted the waters, intercepted their free flow by means of a pipe, and holding back the waters by a dam, to the great damage of the plaintiff. Issue was joined, and the action was tried before a justice and jury at the Livingston circuit in November, 1889. A verdict was rendered in favor of the plaintiff for $600. The defendant moved for a new trial on the minutes, which was denied. Judgment was entered on the verdict, from which and the order the defendant appealed to this court.

The evidence on the part of the plaintiff tended to show that the water of the stream would run the mill through the year, except a part of July and August, and that some years it would run during the whole year. That he operated it 10 months in a year until the defendant built the dam and diverted the water, when he was obliged to stop running the mill for want of water, and that after that there never was a sufficient supply of water to enable the mill to do a regular business. That before this loss of water the rental value of the mill was $500 a year, and afterwards nothing. The plaintiff put a steam-engine and boiler in his mill to supplement its power, and enable it to be run during the dry season, but that it would not pay to run it without the water. The plaintiff's evidence also tended to show that the stream was

never entirely dry until 1883, (after the erection of the defendant's dam,) but has been in July, August, and September since that time.   The plaintiff also gave evidence tending to show that the defendant's dam stopped the flow of the water, and, in connection with the pipe supplying its tank, so diminished the flow in the stream as to destroy the usefulness of the plaintiff's mill, and damage him to the extent of the rental value.   The defendant's evidence tended to show that the dam, including the pipe, did not diminish the water to such an extent as to injuriously affect the plaintiff's mill; also tending to show that the reduced supply at the plaintiff's mill was caused by a gradual drying up of the stream, and that the diversion of water through the pipe did not materially diminish the flow of water below the defendant's dam, and that the plaintiff had sustained no loss or damage by reason of the dam and diversion.   The charge of the trial justice was sufficiently favorable to the defendant.

It is matter of common knowledge that before the forests were cut away, and the lands cleared, streams would flow during the whole year with great uniformity; varied somewhat by thaws and freshets and very dry weather, but not to such an extent as to prevent a continuous flow.   But after the lands were cleared, and improved by ditches and drainage, floods in the streams will be greater, and the flow much more irregular, ceasing frequently at dry times. The causes are entirely obvious.   When unobstructed by logs and timber, the surface water during rains and freshets will flow more rapidly into the streams from a much larger area than before the clearing; while, in dry times, exposure to the sun and evaporation will greatly diminish or entirely stop the flow.   It is undoubtedly true that quite as much water flows during the entire year in most streams as formerly; but there is much greater irregularity and fluctuation than before the lands were cleared.   It is also matter of common observation that a dam ordinarily diminishes, to a greater or less extent, the flow of water below it.   This results from various causes, among which are evaporation, and the soakage of the backed waters into the adjoining lands.   In the case at bar, there was an actual diversion to the extent of 86,-000 gallons a day.   There was evidence, therefore, tending to show that the destruction of the rental value of the plaintiff's mill was caused by the defendant's dam, including the pipe.   The whole evidence was of such a character as to require its submission to the jury.   The damages do not appear to have been excessive; for, according to the plaintiff's evidence, a much larger sum would have been warranted.   The defendant's testimony tended to show that the plaintiff sustained no damage whatever by reason of the diversion of the water; but there was enough evidence on the controverted questions to require a submission of the case to the jury.   There was no question as to the proper construction of the defendant's dam.   The more complete and perfect its finish, the closer it would confine the waters above it.   The defendant contends that the complaint is not sufficient to authorize a recovery except on account of waters diverted by the pipe.   But no objection was made on the trial on account of any defect in the complaint.   If such an objection had been made, its imperfections, if there were any, might have been obviated by amendment.   All the evidence offered by either party was received without regard to the form of the pleadings.   *Wells* v. *Association,* 120 N. Y. 630, 24 N. E. Rep. 276, answers the defendant's objections based on supposed defects in the complaint.   In the defendant's motion for a nonsuit, no objection was made on account of any defect or want of fullness in the complaint.   In *Garwood* v. *Railroad Co.,* 2 N. Y. St. Rep. 701, the rule was stated by the court to be: "Where the proof shows that the defendant, by the withdrawal of water from the stream upon which the plaintiff's grist-mill was situated, decreased the grinding capacity of said mill, the plaintiff is entitled to compensatory damages."   This doctrine is familiar.   *Garwood* v. *Railroad Co.,* 17

Hun, 356; affirmed, 83 N. Y. 400. The case fails to show any errors on the trial to the prejudice of the defendant. The judgment and order must be affirmed. All concur.